UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| UNITED FIRE & CASUALTY COMPANY | CIVIL ACTION NO. 04-1278 |
|---|---|
| -vs- | JUDGE DRELL |
| HIXSON BROTHERS, INC. and HIXSON BROTHERS FUNERAL HOME | MAGISTRATE JUDGE KIRK |

# RULING

Before the Court are cross motions for summary judgment filed by United Fire & Casualty Company (Document No. 15) and Hixson Brothers, Inc. (Document No. 17). The parties have furnished a plethora of documents from the underlying litigation, responsive briefs have been submitted, and representatives of the parties have appeared for oral argument. For the reasons set forth herein, the motion for summary judgment filed by United Fire & Casualty Company (Document No. 15) is GRANTED IN PART and DENIED IN PART, and the motion for summary judgment filed by Hixson Brothers, Inc. (Document No. 17) is GRANTED. In summary, United Fire & Casualty Company (through the insurance policies it has issued since March 31, 1998) has a duty to defend Hixson Brothers, Inc. regarding any claims in the underlying Rapides Parish litigation. However, the petition in that case only asserts a possibility of liability and coverage under

the Mortician's Professional Liability endorsement, as discussed below. Hixson Brothers, Inc. did not request a determination regarding coverage under any portion(s) of the United Fire & Casualty Company policies that might be found to trigger a duty to defend, and therefore, the Court does not provide such a determination.

## I. BACKGROUND

Joe L. Mathews, Sr. was covered by a burial policy he purchased in 1968 from Central State Life Insurance Company ["Central State"], whose obligations were assumed by Kilpatrick Life Insurance Company ["Kilpatrick"] in 1994. There is no dispute that premiums were appropriately paid. Hixson Brothers, Inc. ["Hixson Brothers"] was named in the burial policy as the "Official Funeral Director of the Company," and the policy stated that the funeral benefits included, "Casket, Burial garments, Embalming, and Preparation for Burial, Funeral coach, Use of Funeral Home, Arrangement of Flowers, Conducting the Funeral, [and] Necessary Cemetery Equipment." (Document No. 15, Exhibit "A.")

Hixson Brothers and Central State entered into an "Agreement" dated April 1, 1980 through which Hixson Brothers agreed to act as the "Official Funeral Director" of Central State and to perform funeral services as provided in Central State's burial policies, while Central State agreed to pay Hixson Brothers a "sum equivalent to the full amount of funeral benefits furnished." (Document No. 15, Exhibit "B," Plaintiff's Exhibit "A.")

After Mr. Mathews died on May 31, 1998, his widow, Dorothy L. Mathews, who was also the named beneficiary on the burial policy, expressed displeasure with the casket the funeral director at Hixson Brothers told her was provided through the policy. This resulted in a dispute regarding the terms of the burial policy.

On May 24, 1999, Mrs. Mathews filed a suit titled "Dorothy L. Mathews, *et al.* v. Hixson Brothers, Inc., Hixson Brothers Funeral Home, and Kilpatrick Life Insurance Company," bearing number 196,044 "D" on the docket of the Ninth Judicial District Court, Rapides Parish, Louisiana. In that litigation, Mrs. Mathews seeks damages occasioned by the dispute. She also prays that a class of similarly situated plaintiffs be certified and that she be named as class representative. (Document No. 15, Exhibit "A.")

The following statements are included in Mrs. Mathews's allegations:

(1) although she was willing to purchase an alternative casket at the full retail cost while still taking advantage of the other benefits specified in the burial policy, Hixson Brothers [through its funeral director] told her she would forfeit all the funeral benefits outlined in the burial policy if she bought or used a different casket, and she would only receive a $1,000 "credit" for the "face value" of the policy;

(2) defendants' failure to provide the services specified in the burial policy constituted a breach of the terms of that policy;

(3) Hixson Brothers unreasonably failed to perform under the policy during an "emotionally challenging time . . .[;]"

(4) Mrs. Mathews had to pay for the same services and benefits specified in the burial policy that had already been purchased in good faith by her deceased husband;

(5) the burial policy was intended to gratify a non-pecuniary interest;

(6) defendants' interpretation of the burial policy was "without cause, unfair, deceptive and clearly in breach of the plain language of the policy . . .[;]"

(7) she has suffered damages for "mental anguish, intimidation, suffering, stress, anxiety, inconvenience, embarrassment, coercion, and . . . economic harm . . .[;]"

(8) defendants contracted with the policyholders, were obligated to provide the specified benefits, and failed to do so;

(9) plaintiff was "forced" to purchase merchandise and services that were supposed to be provided at no additional cost;

(10) plaintiff is entitled to "breach of contract damages" as well as "damages for non pecuniary loss pursuant to Louisiana Civil Code article 1998 . . .[;]" and

(11) whether defendants "acted willfully, wantonly, negligently and/or intentionally" is a fact question common to Mrs. Mathews and all the potential class members.

[Document No. 15, Exhibit "A," paragraphs 17-19, 22, 24, 26-29, 50-51, 54-56, and 61(a).]

The third supplemental and amending petition filed in the Rapides Parish litigation adds Susan M. Robbins as a plaintiff, in relation to disputes that arose regarding two burial policies Daisy B. Robbins purchased in 1976 and 1962. Daisy Robbins died on November 16, 1994. (Document No. 15, Exhibit "D.")

In the case at bar, United Fire & Casualty Company ["United Fire"] is seeking a declaratory judgment that it owes no coverage or defense obligation to Hixson Brothers in the Rapides Parish lawsuit under any of the policies United Fire issued to Hixson Brothers from March 31, 1998 through the present date. United Fire has, thus far, paid for the defense of the Rapides Parish litigation under a reservation of rights. (Document No. 1.)

## II. JURISDICTION

Plaintiff alleges this Court has jurisdiction over the request for declaratory judgment under 28 U.S.C. §§ 1332 and 2201. (Document No. 1.) Defendant does not contest jurisdiction, but it is incumbent upon this Court to confirm its jurisdiction.

5

The "actual controversy" requirement in § 2201 is satisfied, even if the state court action has not yet proceeded to judgment. *See* American States Insurance Company v. Bailey, 133 F.3d 363, 368 (5th Cir. 1998). The complete diversity mandate in § 1332 is met, because plaintiff is an Iowa corporation, and defendant is a corporation formed under the laws of Louisiana. The amount in controversy prerequisite, while somewhat more problematic, is also satisfied. In an action for declaratory relief, the amount in controversy for diversity jurisdiction purposes is "'the value of the right to be protected or the extent of the injury to be prevented.'" Hartford Insurance Group v. Lou-Con Inc., 293 F.3d 908, 910 (5th Cir. 2002), [quoting Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983)]. It is not facially apparent from plaintiff's petition whether United Fire faces at least $75,000 in defense costs and potential payments under the insurance policies at issue. Therefore, the Court may look to "'summary judgment type'" evidence to determine the amount in controversy. Hartford Insurance Group, 293 F.3d at 910 [quoting St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1252 (5th Cir. 1998)].

The underlying state court class action seeks,

> [P]ecuniary and non pecuniary damages, including but not limited to mental anguish, intimidation, coercion, suffering, stress, worry, economic harm, attorney fees, costs of this action, [and] prejudgment interest, together with such other and further relief as this Court deems appropriate.

(Document No. 15, Exhibit "A.")

The two named plaintiffs assert pecuniary damage claims of $5,299.00 and $3,952.80, respectively, in addition to their other non-specified damages claims. (Document No. 15, Exhibits "A" and "D.") A decision issued by the Louisiana Third Circuit Court of Appeal on February 4, 2004 reveals the state court suit has been certified as a class action and has already been through the state appellate system twice on pre-trial issues. Mathews v. Hixson Brothers, Inc., 03-1065 (La. App. 3d Cir. 2/4/04), 865 So.2d 1024. In that case, the Third Circuit explained the potential class could include as many as 200 claimants in 1999 alone. Even if a small percentage of these possible plaintiffs were to assert claims in amounts similar to the pecuniary damages specified by the two currently-named plaintiffs, United Fire's exposure would satisfy this Court's monetary threshold for diversity jurisdiction.

## III. ANALYSIS

### A. United Fire's Insurance Policies

Attached to United Fire's motion for summary judgment is a certified copy of the Commercial Lines Policy United Fire issued to Hixson Brothers for the period of March 31, 1998 through March 31, 1999 and a copy of the Commercial Umbrella Liability Policy United Fire issued to Hixson Brothers for the same time period. (Document No. 15, Exhibits "E" and "F," respectively.) There is no dispute the terms of the policies have been in effect, through renewals, since the date Joe L. Mathews died.

7

The Court notes that "Hixson Brothers Funeral Home" is named as a defendant in the current action for declaratory judgment only "to the extent it claims to be insured under any of the policies issued by United Fire." (Document No. 1, Paragraph 2.) Hixson Brothers, Inc. admits in its answer that it is the only defendant, because "'Hixson Brothers Funeral Home' is not a defendant and is not an entity." (Document No. 8, Paragraph 2.) Accordingly, any potential claims against "Hixson Brothers Funeral Home" are not relevant to this Court's decision.

The "Commercial General Liability Coverage Form" portion of United Fire's Commercial Lines Policy provides, in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement.**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

    * * *

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" . . . .

    * * *

2. **Exclusions.**

    This insurance does not apply to

a. **Expected or Intended injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

\* \* \*

## SECTION V – DEFINITIONS

\* \* \*

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

In the memorandum supporting its motion for summary judgment, United Fire admits "the applicable provisions of the umbrella policy . . . are essentially the same as those contained in the commercial general liability policy." (Document No. 15, footnote 4.)

The United Fire CGL policy also contains a "Mortician's Professional Liability" endorsement that provides, in relevant part:

The following is added to SECTION 1, COVERAGES:

We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or mental anguish arising out of the rendering or failure to render professional services as a mortician caused by:

A.  malpractice, error, negligence or mistake . . . .

9

### B. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party must initially show "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party need only point out the absence of evidence supporting the nonmoving party's case, it "need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Allegations in the pleadings, naked assertions of factual disputes, and conclusory allegations are not sufficient. *See* Fontenot v. Upjohn Co., 780 F.2d 1190, 1195-96 (5th Cir. 1996); Solo Serve Corp. v. Westowne Assoc., 929 F.2d 160, 164 (5th Cir. 1991); and Herrera v. Millsap, 862 F.2d 1157, 1160 (5th Cir. 1989). After such a showing, the nonmoving party must come forward, after adequate time for discovery, with "specific facts" establishing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e) and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### C. Duty to Defend and Indemnify

#### 1. General Legal Principles

There is no dispute that in this diversity case, Louisiana substantive law governs the interpretation of the insurance policies at issue. Lamar Advertising Company v. Continental Casualty Company, 396 F.3d 654, 659 (5th Cir. 2005).

> Under Louisiana law, an insurer's duty to defend suits brought against an insured is broader than [its] duty to indemnify the insured. Whether an insurer has a duty to defend is determined solely by comparing the allegations in the complaint against the insured with the terms of the policy at issue – the so-called "eight corners" rule. If there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded, the insurer must defend the insured. Accordingly, assuming all the allegations of the petition are true, the insurer must defend, regardless of the outcome of the suit, if there would be both (1) coverage under the policy and (2) liability to the plaintiff. In making this determination, this Court must liberally interpret the complaint.

Id. at 660 (internal quotations and citations omitted).

#### 2. The CGL Provisions, In General

United Fire takes the position that the allegations in the underlying suit sound in contract, not in tort, and are not "occurrences" under the CGL policy for which coverage would be provided. United Fire further argues that even if the petition does seek damages for conduct that could be construed as an "occurrence" under the policy, that conduct is specifically excluded from coverage as either bodily injury/property damage expected or intended from the standpoint of the insured or bodily injury/property damage for which the insured is obligated

11

to pay damages by reason of the assumption of liability in a contract or agreement.

Hixson Brothers, on the other hand, contends the underlying petition does describe tortious acts that fit the definition of "occurrence." Defendant further asserts that the exclusions are inapplicable, because the petition does not allege Hixson Brothers intended the actual damages that occurred and because Hixson Brothers's potential liability does not arise from a contractual assumption of liability.

Louisiana has a system of fact pleading under which a petitioner must plead "material facts," which "allege more than mixed questions of law and fact, such as that the defendant breached the contract or acted unreasonably . . . . Rather, . . . the pleader . . . [must] state what act or omission he . . . will establish at trial." Fitzgerald v. Tucker, 98-2313 (La. 6/29/99), 737 So.2d 706, 713.

In this case, the claims of the class action plaintiffs against Hixson Brothers are factually based not in accidental circumstances, but in planned commercial transactions: the purchase of burial insurance policies; a contract through which Hixson Brothers agreed to perform funeral services as provided in those policies; plaintiffs' attempts to procure those services; and Hixson Brothers's alleged failure to provide the promised services. While it may be true the class action plaintiffs could have alleged facts that would support different theories of recovery against Hixson Brothers, they simply have not done so. The general

provisions of United Fire's CGL policy extend coverage to damages that result from an "occurrence," which is then further defined as an accident that includes continuous or repeated exposure to certain harmful conditions. The facts set forth in the underlying petition do not allege such an "occurrence."

Because the United Fire policy defines "occurrence" without taking into account whether the bodily injury or property damage was expected or intended from the standpoint of the insured, this Court is not called upon to, and need not, address the "intentional acts versus intentional damages" arguments that have faced other courts interpreting insurance policies that tie the *definition* of "occurrence" to intent. *See for example* Brooks v. National Service Insurance Company, Inc., 524 So.2d 141 (La. App. 4th Cir. 1988); Alert Centre, Inc. v. Alarm Protection Services, Inc., 967 F.2d 161 (5th Cir. 1992). In general, those cases define "occurrence" as an accident resulting in bodily injury or property damage neither expected nor intended from the standpoint of the insured. Here, however, the intent issue is not part of the definition of "occurrence," but is, instead, a specific exclusion. Under these facts, there is no "occurrence" as defined in the United Fire policy.

### 3. The Mortician's Professional Liability Endorsement

If the Court were to accept United Fire's position that the definition of "occurrence" in the main portion of the CGL policy also applies to the Mortician's Professional Liability endorsement, the previous finding of no "occurrence" would

13

equate to a finding of no coverage under the endorsement. However, the language of the endorsement itself does not support such a conclusion. While the endorsement does cover "bodily injury," which is tied to an "occurrence" in the general provisions of the CGL policy, the endorsement also *adds* coverage for "mental anguish arising out of the rendering or failure to render professional services as a mortician caused by . . . malpractice, error, negligence, or mistake . . . ." There is no requirement in the endorsement that the "mental anguish" arise from an "occurrence." Thus, the endorsement provides broader coverage than is afforded under the general CGL policy.

The issue for the Court, then, becomes whether the state court petition unambiguously excludes coverage under the endorsement. The Louisiana Third Circuit Court of Appeal has recently explained:

> Interpretation of an insurance policy is a question of law . . . . Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. If an exclusionary clause is deemed ambiguous, an insurance policy must be liberally construed in favor of coverage; provisions susceptible of different meanings must be interpreted to render coverage effective rather than ineffective.

Hardie v. Professional Physical Rehabilitation Hospital, LLC, 04-445 (La. App. 3d Cir. 9/29/04), 883 So.2d 510, 512 (internal quotations and citations omitted).

14

Generally, Louisiana law uses the terms "funeral director" and "funeral directing" rather than "mortician." La. R.S. 37:831. Under that statute, a funeral director is a person who has been issued a valid license to operate a funeral home. Such operation includes, but is not limited to,

> [A]ny service whatsoever connected with the management of funerals, . . . the purchase of caskets or other funeral merchandise, and retail sale and display thereof, . . . and the performance or supervision of any service or act connected with the management of funerals from time of death until the body or bodies are delivered to the cemetery . . . for the purpose of disposition.

La. R.S. 37:831(35) - (36).

<u>Webster's New World Dictionary of the American Language, Second College Edition</u> (David B. Guralnik, et al., eds. 1980) defines "mortician" as "undertaker," which is, in turn, defined as "earlier term for funeral director." Thus, under the Louisiana principles of contract interpretation explained above, it is fair to interpret the mortician's endorsement as one which also affects funeral directors. It is likewise reasonable to find the activities set forth in the class action petition are those of a funeral director, to which the mortician's endorsement applies. <u>Webster's Dictionary</u> also defines "error" as "the state of believing what is untrue, incorrect, or wrong . . . a wrong belief; incorrect opinion . . . ."

Because the underlying state court petition outlines facts which, taken as true, could support a claim that Hixson Brothers (by reason of an error as to the extent of coverage intended in the burial policies at hand) is liable for mental

15

anguish damages arising out of the failure to render funeral services, the mortician's endorsement might provide coverage. As explained above, the allegations against Hixson Brothers in the class action revolve around the failure of that defendant to provide funeral benefits as specified in the applicable burial policies. These are arguably the types of activities contemplated by the mortician's endorsement. Further, under Louisiana law, even if the endorsement were found to be ambiguous, it would be construed in favor of coverage. The proper interpretation of the burial policies, the nature of Hixson Brothers's conduct, possible damages, and whether the underlying facts under the available coverage of the mortician's endorsement are issues for the state court, provided United is a named party in the state proceeding.

For these reasons, the Court is unable to say that the state court plaintiffs' claims for mental anguish are unambiguously excluded from coverage under the Mortician's Professional Liability endorsement. However, plaintiffs' other claimed damages are clearly excluded from all the policy terms presented. In Louisiana, "when an insurer has a duty to defend any claim asserted, the insurer must defend the entire action brought against its insured." <u>Riley Stoker Corporation v. Fidelity and Guaranty Insurance Underwriters, Inc.</u>, 26 F.3d 581, 589 (5th Cir. 1994).

## IV. CONCLUSION

In summary, United Fire, through the insurance policies it has issued since March 31, 1998, has a duty to defend Hixson Brothers regarding any claims in the underlying Rapides Parish litigation. However, the petition in that case only asserts a possibility of liability and coverage under the Mortician's Professional Liability endorsement. Hixson Brothers did not request a determination regarding coverage under any portion(s) of United Fire's policies that might be found to trigger a duty to defend, and therefore, the Court does not provide such a determination.

For the reasons set forth above, the motion for summary judgment filed by United Fire & Casualty Company (Document No. 15) is GRANTED IN PART and DENIED IN PART, the motion for summary judgment filed by Hixson Brothers, Inc. (Document No. 17) is GRANTED, and Plaintiff's claims are DISMISSED.

SIGNED on this 23rd day of June, 2005, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge